FILED
2011 Sep-20  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| REGIONS EQUIPMENT FINANCE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:11-CV-2098-VEH |
| | ) |
| RICHARD TRUMAN, an individual; et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiff Regions Equipment Finance Corporation's ("Regions" or "REFCO") Motion For Default Judgment Against Defendants, filed on August 1, 2011. (Doc. 11). The Court ordered the Defendants to show cause on or before August 17, 2011, why this Motion should not be granted. (Doc. 22). The Defendants did not respond to the Court's show cause order. Though the Defendants have been placed on notice of the default proceedings against them, they have not availed themselves of the opportunity to be heard in opposition to the Plaintiff's request. The Court has reviewed the Complaint, the Motion for Default Judgment, and all its attachments. For the reasons discussed in this Memorandum Opinion, the Plaintiff's Motion is due to be **GRANTED**.

# I. BACKGROUND[1]

This diversity action arises from a default on a Master Lease Agreement, which involves the leasing of certain tractors and trailers ("the Equipment"). (Doc. 1, Complt. ¶¶ 9, 14, 15). The Master Lease Agreement was entered into on or about September 26, 2006, between Las Lomas Equipment, LLC ("Las Lomas" or "the Lessee") and General Electric Capital Corporation ("GECC" or "the Lessor"). (Doc. 1, Complt. ¶ 9). A copy of the original Master Lease Agreement is attached to the Complaint as Exhibit A. (Doc. 1, Complt., Ex. A). Its terms consist of any general terms contained in the Master Lease Agreement "together with any Schedule" that may be executed by the parties for the leasing of specific Equipment. (*Id.* ¶ 9).

Pursuant to an earlier Master Assignment Agreement ("the Assignment"), GECC generally assigned to AmSouth Leasing, LTD ("AmSouth") (now Regions)[2] all "rights, duties and obligations" under its future Master Lease Agreements, as

---

[1] The Plaintiff's well-pleaded facts are deemed admitted for the purposes of default judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). S*ee also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[2] The Plaintiff notes in Paragraph 13 of its Complaint that AmSouth Leasing, LTD is the predecessor to Regions Equipment Finance Corporation. (Doc. 1, Complt. ¶ 13; *see also* Mississippi Sec'y of State, Business Services Records, https://business.sos.state.ms.us/corp/soskb/Corp.asp?289617 (showing AmSouth Leasing, LTD as previous legal title of Regions Equipment Finance Corporation, incorporated in Alabama)).

GECC may elect to enter them "from time to time."  (Doc. 1, Complt. ¶ 13).  Those rights, duties, and obligations include the Lessor's responsibility: "(i) to acquire and lease the Equipment set forth in the applicable Schedule(s), (ii) under the Lease insofar as related to the Equipment, and (iii) under the Guarantees (insofar as the Guarantees relate to the [applicable] Schedule(s))."  *Id.*  A copy of the signed Assignment, dated November 16, 2001, is attached as Exhibit E to the Complaint. (Doc. 1, Complt., Ex. E).

The Defendants[3] to this action are Guarantors who each executed certain Guaranty Agreements in favor of GECC (and its successors and assigns, *i.e.*, Regions), in which each Guarantor jointly and severally guaranteed punctual payment "of any type of sum of any kind whatsoever" that the Lessee may owe.  (Doc. 1, Complt. ¶ 10).  Specifically, the Guaranty Agreements provide that each Guarantor is jointly and severally liable with any other Guarantors for the following:

> the due regular and punctual payment of any sum or sums of money which [Las Lomas] may owe to [GECC] now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late

---

[3] The Defendants are Richard Truman, an individual; Patricia M. Truman, an individual; Mitchell W. Truman, an individual; The Truman Family Limited Partnership II, a Nevada limited partnership; and Pan Western Corporation, a Nevada corporation (collectively "the Defendants" or "the Guarantors").  The Trumans have an apparent ownership or managerial interest in Las Lomas Equipment, LLC, as evidenced by the Master Lease Agreement between GECC and Las Lomas, which contains the signatures of Mitchell Truman as "manager" of Las Lomas and Patricia Truman as its "secretary." (*See* Doc. 1, Complt., Ex. A).

charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that [Las Lomas] may owe to you now or at any time hereafter . . .

Copies of the Guaranty Agreements, each executed by a Guarantor and dated December 26, 2002, the terms of which are identical, are attached to the Complaint as Exhibits B, C, and D-1 through D-3.  (Doc. 1, Complt., Exs. B, C, D-1 to D-3).

Pursuant to the terms of the Guaranty Agreements, the Lessor is not required to seek payment or performance from the Lessee before demanding payment from the Guarantors.  (*See, e.g.,* Doc. 1, Complt., Ex. B ¶ 2).  In addition to the obligation of the Guarantors to pay rent, late charges, and a deficiency after sale or other disposition of any leased Equipment, the Guaranty Agreements also provide that the Guarantors agree to pay, upon demand, all losses, costs, attorneys' fees, and expenses which may be incurred by the Lessor as a result of the Lessee's default, or the default of any Guarantor.  (*See, e.g.,* Doc. 1, Complt., Ex. B ¶ 1).

On September 28, 2006, the Guarantors signed a "Notice and Acknowledgment of Assignment" document acknowledging that GECC notified them that it had assigned to AmSouth all its right, title, interest and obligations under the September 27, 2006 Master Lease Agreement concerning the lease of certain Peterbilt Tractors. (Doc. 1, Complt., ¶ 13).  A copy of the signed Notice and Acknowledgment of

4

Assignment is attached to the Complaint as Exhibit F.  (Doc. 1, Complt., Ex. F).  A second, similar notice of assignment was executed on that same date, wherein the Guarantors acknowledged AmSouth's rights as assignee regarding the lease of certain SmithCo. Trailers contemplated in the September 27, 2006 Master Lease Agreement. (Doc. 1, Complt., ¶ 15).  A copy of that signed notice is attached to the Complaint as Exhibit G.  (Doc. 1, Complt., Ex. G).  The notices demonstrate the Guarantors' acknowledgment that all future payments under the Master Lease Agreement would be payable to AmSouth.  (*See id.* ¶ 2).

Also on September 28, 2006, Las Lomas and AmSouth executed two Schedules, pursuant to the Master Lease Agreement, to fund the lease of certain Equipment.  (Doc. 1, Complt., ¶¶ 16, 17).  Schedule No. A-1 funded the lease of certain Peterbilt Tractors in the amount of $1,802,156.00.  (Doc. 1, Complt., ¶ 16). Schedule No. A-2 funded the lease of certain SmithCo. Trailers in the amount of $1,122,804.50.  (Doc. 1, Complt., ¶ 17).  A copy of Schedule A-1 is attached as Exhibit H to the Complaint; Schedule A-2 is attached as Exhibit I.  (Doc. 1, Complt., Exs. H, I).  Along with the Schedules, AmSouth and GECC executed two documents titled "Specification of Assigned Interest" that set forth the terms of the Schedules, listing the individual Guarantors (*i.e.*, the Defendants), listing the total invoice cost for each Schedule and the amount of remaining rentals due, and establishing the terms

5

of the remaining monthly payments. (*See* Doc. 1, Complt., Exs. J, K).

Having failed to make its rent payments, Las Lomas is now in default under the Master Lease Agreement. (Doc. 1, Complt., ¶¶ 19, 20). Regions contends that by the terms of the Master Lease Agreement, specifically Section 11(a)(i), Las Lomas remains in continuing default for its failure to make payments and, accordingly, Regions "has the right to demand immediate payment from the Guarantors for the payment, *inter alia*, of all the sums owed and to exercise any and all rights and remedies available to REFCO at law, in equity or by agreement." (Doc. 1, Complt., ¶¶ 20, 21). Regions avers that it already demanded payment from the Guarantors, to no avail. (*See* Doc. 1, Complt., ¶ 24).

On June 15, 2011, Regions filed its Complaint in this Court against the Guarantors, namely Richard Truman, Patricia M. Truman, Mitchell W. Truman, The Truman Family Limited Partnership II, and Pan Western Corporation. (*See* Doc. 1). The Complaint avers that the individual Defendants each reside in Las Vegas, Nevada, and that the two entity Defendants were organized and exist pursuant to Nevada law, with their principal places of business and registered agents in Las Vegas.[4] (Doc. 1, Complt. ¶¶ 2-6). Regions requested that the Court serve all

---

[4] Moreover, the Complaint averred that the registered agents for each entity could be served with process at an address in Las Vegas, Nevada. (Doc. 1 ¶¶ 5-6).

Defendants by certified mail (Doc. 2), and the clerk  issued summonses on June 17, 2011 to each Defendant at the Nevada addresses provided in the Complaint.  (Doc. 6).  The summonses were returned executed and filed by the clerk on June 23, 2011, (Doc. 7), and June 27, 2011.  (Doc. 8).

Upon the Plaintiff's motion (Doc. 9), the clerk entered default against the Defendants on July 21, 2011, pursuant to Federal Rule of Civil Procedure 55(b). (Doc. 10).

The Plaintiff then filed its Motion for Default Judgment (Doc. 11), and on August 3, 2011, this Court issued an Order to Show Cause why a Default Judgment should not be entered.  (Doc. 12).  The Defendants have not responded to the Court's Show Cause Order.  The Court now turns to the merits of the Plaintiff's Motion.

## II.  ANALYSIS

### A.    Legal Basis for Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  However, entry of a default under Rule 55(a) does not automatically entitle a party to his requested relief.

There must be a sufficient basis in the pleadings for the judgment

> entered.  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short, a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover.

*E Beats Music v. Andrews*, 433 F. Supp. 2d 1322, 1325 (M.D. Ga. 2006) (quoting

*DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004)); *Nishimatsu*

*Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[5]

Judge William H. Steele of the Southern District of Alabama has provided a

helpful and succinct summary of the applicable standards for a court to apply when

addressing a pending motion for default judgment.

> Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commer. Mortg. Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim).  Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

*Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 591-92 (S.D. Ala. 2007).

---

[5]  *See Bonner*, 661 F.2d at 1209, *supra* note 1.

Thus, the legal effect of the defendant's default is that the facts averred by the plaintiff in the complaint are deemed admitted. *See Nishimatsu Const. Co.*, 515 F.2d at 1206 ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *McMillian/McMillian, Inc. v. Monticello Ins. Co.*, 116 F.3d 319, 321 (8th Cir. 1997) (explaining that "when a default judgment has been entered, facts alleged in the complaint . . . may not be contested by the defaulted party"). Accordingly, the Court looks to the factual bases in the Complaint to determine whether they state a claim that entitles Regions to relief.

Region's Complaint consists of two counts: Count I for Breach of Contract by the Guarantors, and Count II for Attorneys' Fees. Because these claims arise from the Guarantors's obligations under the Guaranty Agreements, the first issue for the Court to resolve is which state's law applies to those contracts. Because the Guaranty Agreements do not stipulate which state's law governs them, the Court turns to the applicable choice of law principles.

**B.   Choice of Law**

A federal court sitting in diversity must apply the choice of law rules for the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 392 (11th Cir. 1967) ("When there is a question as to which state law should be applied, the federal court must follow a

conflict of laws rule which conforms to those prevailing in the state in which it sits; viz., the conflict of laws rules of the state." (citation omitted)).  Under Alabama law, where the parties have not specified a particular sovereign's law to govern a contract, courts follow the principle of *lex loci contractus*, applying the law of the state where the contract was formed.  *Stovall v. Universal Const. Co.*, *Inc.*, 893 So. 2d 1090, 1102 (Ala. 2004).  In this case, the Guaranty Agreements Regions seeks to enforce were signed by individuals who reside in, and entities that are located in, Nevada.[6] Therefore, the Court finds that Nevada law applies to govern interpretation and enforcement of the Guaranty Agreements.

In a recent decision, the Nevada Supreme Court, sitting *en banc*, held that "general contract interpretation principles apply to interpret guaranty agreements," clarifying its previous precedent to the contrary.  *Dobron v. Bunch*, 125 Nev. 36, 37, 215 P.3d 35, 37 (2009) (en banc).[7]  The Court's decision to do so "conforms with the modern trend stated in Restatement (Third) of Suretyship and Guaranty, section 14, comment c (1996)," and "provides a clearer, less mechanical approach to the

---

[6]  *See supra* Background discussion at 6; *see also* Doc. 1, Complt. ¶¶ 2-6.

[7]  Under its previous precedent, the Supreme Court of Nevada had applied a strict construction rule based on a distinction that involved whether the guarantor was compensated or uncompensated as a surety.  *See id.*  The Court "conclude[d] that there is no sound reason to continue to use such distinctions . . . ."  *Id.*  Accordingly, it expressly "eliminate[d] the construction rule that a guaranty agreement be strictly construed in any party's favor."  *Id.*

interpretation of guaranty agreements." *Id.*   To prevail on a claim for breach of contract under Nevada law, a plaintiff must prove: (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234 (D. Nev. 2008) (applying Nevada law).  Here, the well-pleaded factual allegations of the Plaintiff's Complaint, which are deemed admitted for the purposes of default, *see infra* Section C., establish the existence of a valid contract (Doc. 1, Complt. ¶¶ 10–12 and Exs. B, C, D-1, D-2, D-3), and a breach by the Defendants (*id.* ¶¶ 19–25).  The Complaint also sufficiently alleges facts to support a claim for damage resulting from the breach (*id.* ¶ 25), but the Court will discuss the amount of damages separately, *see infra* Section C.1.

Regions's second claim is for attorneys' fees as provided for by the Guaranty Agreements.  The *Dobron* decision also squarely addressed the issue of attorneys' fees under a guaranty agreement and set forth the applicable law:

> . . . [W]e apply general contract interpretation rules to determine whether the clause at issue provides for the recovery of attorney fees. The applicable contract interpretation rule in this case is that ''[w]here a contract provision purports to allow attorney's fees in an action arising out of the terms of the instrument, we will not construe the provision to have broader application.'' *Campbell v. Nocilla*, 101 Nev. 9, 12, 692 P.2d 491, 493 (1985).

*Dobron,* 125 Nev. at 38, 215 P.3d at 38.  Application of this rule to this case is clear, as the Guaranty agreements contemplate in no uncertain terms that the Guarantors

would "guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by [the Lessor] by reason of [Las Lomas]'s default or default of the undersigned." (Doc. 1, Complt., Exs. B ¶ 1, C ¶ 1, D-1 ¶ 1, D-2 ¶ 1, D-3 ¶ 1).

Therefore, the Court finds that Regions states a claim for both breach of contract and for attorneys' fees under Nevada law based on Las Lomas's default under the Master Lease Agreement and the express terms of the Guaranty Agreements, which hold the Defendants jointly and severally liable for any damages arising from Las Lomas's default, including costs and attorneys' fees.

Because the facts alleged in the Complaint are sufficient to establish the Defendants' liability under both counts of the Complaint, and because the Defendants have made no attempt to defend this action since it was initiated, the Court now turns to Region's requested remedies, which consist of damages, attorneys' fees, and costs.

## C.    Remedies

"While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records Am., Inc.*, 510 F. Supp. 2d at 593 n.5; *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (federal law requires judicial determination of damages absent factual basis in record).

The court may make its determination as to the appropriate remedy with or without a hearing.[8]  Addressing this issue in another case, Judge Steele again provides this Court with a helpful framework, writing:

> [T]here is no requirement that a hearing be conducted in all default judgment proceedings to fix the appropriate level of damages.  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (explaining that evidentiary hearing is not *per se* requirement for entry of default judgment, and may be omitted if all essential evidence is already of record).  Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required. *See, e.g., Chudasama*, 123 F.3d at 1364 n.27 (judicial determination of damages is unnecessary where claim is for sum certain or for sum which can by computation be made certain); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (award of statutory damages was improper "without a hearing or a demonstration by detailed affidavits establishing the necessary facts"); *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (1st Cir. 2002) (district court did not abuse discretion, based on record before it, in declining to hold hearing before awarding statutory damages); *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (evidentiary hearing not necessary where facts in the record enable the court to fix the amount which the plaintiff is lawfully entitled to recover); *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (although court must make independent determination of the sum to be awarded, court need not hold a hearing, but may rely on detailed affidavits or documentary evidence); *United States v. Cabrera-Diaz*, 106 F. Supp. 2d 234, 243 (D.P.R. 2000) (similar).

*Atl. Recording Corp. v. Carter*, 508 F. Supp. 2d 1019, 1025 (S.D. Ala. 2007) (footnote omitted).  In this case, a hearing is not necessary, because the amount of

---

[8]  No jury has been demanded in this case.

13

damages arising from the breach of contract claim is a sum certain, and Regions provided the Court with sufficient affidavits and documentary evidence to support its requests for relief.

1.    Contractual Damages

In a default judgment proceeding, "[d]amages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F. 2d 854, 857 (5th Cir. 1979)).[9]

Regions seeks damages in the amount of $1,346,965.67 against the Defendants on its breach-of-contract claim. *See* Aff. of Tiffany Leonard, Doc. 11-1, Ex. B at ¶ 13; *see also* Aff. of Don Dodson, Doc. 11-1, Ex. C at ¶ 5. A plaintiff's allegation of breach of contract is not enough, by itself, entitle it to damages; actual damages must be shown. *See Golden v. McKim* 27 Nev. 205, 205, 141 P. 676, 678 (Nev. 1914) ("The law, however, only authorizes the recovery of the actual damage sustained upon the breach of a contract of this character; and if no actual damage is proven none can be recovered, though a breach of contract is shown." (citation omitted)). "The goal of a damage award for breach of contract is that "the breaching party must

_____

[9]  *See Bonner*, 661 F.2d at 1209, *supra* note 1.

place the nonbreaching party in as good a position as if the contract were performed."

*Eaton v. J.H., Inc.*, 94 Nev. 446, 450, 581 P.2d 14, 16-17 (Nev. 1978) (quoting

*Lagrange Constr., Inc. v. Kent Corp.*, 88 Nev. 271, 275, 496 P.2d 766, 768 (1972)).

Analysis of actual damages in this case is straightforward because the Plaintiff

requests a sum certain, as established by the affidavit of Don Dodson.  Mr. Dodson

is a Vice-President of Regions Equipment Finance Corporation.  Aff. of Don Dodson,

Doc. 11-1, Ex. C at ¶ 3.  He attests that the Defendants owe Regions $1,346,965.67,

as evidenced by two copies of original invoices attached to his affidavit.  *Id.* at Exs.

1, 2.  The invoices, addressed to Las Lomas Equipment, LLC, show the remaining

balances as of April 28, 2011, on the contracts numbered 090-0004699-001 and 090-

0004699-002.   The first invoice shows $562,584.78 owed as remaining rents,

$168,740.00 owed as the residual amount due at the end of the term, and $38,014.56

in late charges, for a total outstanding balance of $769,339.34.  *Id.* at Ex. 1. The

second invoice shows $431,250.71 owed as remaining rents, $126,782.66 owed as

the residual amount due at the end of the term, and $19,592.96 in late charges, for a

total outstanding balance of $577,626.33.  *Id.* at Ex. 2.  Together, those invoices

demonstrate that Las Lomas's total outstanding balance under the two contracts is

$1,346,965.67.

The two equipment schedules are subject to the Master Lease Agreement

concerning default and remedies.[10]  (Doc. 1, Complt., Ex. A ¶ 11).  Paragraph 11 of

the Master Lease Agreement provides, in relevant part:

> (a)     Lessee shall be in default under this Agreement and under
> any Lease upon the occurrence of *any* of the following (each an "Event
> of Default", and collectively, the "Events of Default"):

> (i)     Lessee fails to pay within ten (10) days after its due date,
> *any Rent or any other amount* due under this Agreement or
> any Lease; . . . .

*Id.*  Las Lomas defaulted under these terms by failing to pay the rents owed under the

two schedules executed for the Peterbilt tractors and SmithCo. trailers.  (Doc. 1,

Complt. ¶¶ 19–22).  As a result, the Defendants are in default of their obligations as

Guarantors for failing to satisfy the outstanding sums due under the Master Lease

Agreement. (Doc. 1, Complt. ¶ 23).

The Court finds that Regions has adequately established by affidavit its actual

damages under the terms of the Master Lease Agreement, specifically in the form of

lost profits.[11]  "Lost profits commonly constitute damages in breach of contract

actions.  *Eaton v. J.H., Inc*., 94 Nev. 446, 581 P.2d 14, 17 (1978).  Lost profits are

---

[10]  Though addressing different equipment, the two equipment schedules are identical in their general terms, which provide that they are "executed pursuant to, and incorporate[] by reference the terms and conditions of . . . the Master Lease Agreement [dated September 27, 2006] . . . ." (Doc. 1, Complt., Exs. H ¶ 1 and I ¶ 1).  The equipment schedules do not contain an independent provision concerning default or remedies; thus, the applicable provision is found in the Master Lease Agreement.

[11]  The Master Lease Agreement does not contain a liquidated damages clause.

16

what the profits would have been had the contract not been breached.  *Id.*"  *Brown v. Kinross Gold U.S.A., Inc.*  531 F. Supp. 2d 1234, 1244 (D. Nev. 2008).  Based on the sworn affidavit of Mr. Dodson, the Court finds that but for the Defendants' breach of their obligations under the Guaranty Agreements, which relate to Las Lomas's failure to pay Regions sums owed under the equipment schedules and Master Lease Agreement, Regions would have received the full amount of the outstanding balances recorded on both of the Invoices attached to his affidavit.  Therefore, Regions is due to be awarded a default judgment of $1,346,965.67 on its breach-of-contract claim.  Moreover, the Defendants are jointly and severally liable for this amount pursuant to the terms of the Guaranty Agreements.

     2.   <u>Attorneys' Fees</u>

Regions also seeks attorneys' fees in the amount of $5,980.01 for its efforts in prosecuting this matter.  *See* Aff. of Tiffany Leonard, Doc. 11-1, Ex. D.  The Guaranty Agreements signed by the Defendants in favor of Regions explicitly provide that the Defendants will pay all losses, costs, attorneys' fees, and expenses that may be incurred by Regions in collecting the outstanding debt.  *See* Guaranty Agreements, Doc. 11-1, Ex. E ¶ 1 ("Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.").  Because Regions seeks

attorney fees pursuant to an express provision in the Guaranty Agreements, the Court again looks to Nevada law pursuant to the above choice of law analysis.

"It is well established in Nevada that attorneys' fees cannot be recovered unless authorized by agreement or by statute or rule." *Young v. Nevada Title Co.*, 103 Nev. 436, 442, 744 P.2d 902, 905 (Nev. 1987) (citing *Sun Realty v. District Court*, 91 Nev. 774, 776, 542 P.2d 1072, 1074 (1975)).   Further, Nevada courts apply a different analysis for attorney fees that arise as a "cost of litigation" pursuant to a rule, statute, or agreement, as opposed to those that arise "as an element of damage."  *See Sandy Valley Assocs. v. Sky Ranch Estates*, 117 Nev. 948, 955–60, 35 P.3d 964, 968–71 (2001) (distinguishing between attorney fees as a cost of litigation and as special damages), *receded from on other grounds as stated in Horgan v. Felton,* 123 Nev. 577, 579, 170 P.3d 982, 983 (2007).  Here, Regions requests attorneys' fees as a cost of litigation pursuant to express authorization in a contractual agreement.

In *Sandy Valley*,[12] the Supreme Court of Nevada fully set out the appropriate procedure and analysis for attorneys' fees requested as a cost of litigation:

> Procedurally, when parties seek attorney fees as a cost of litigation, documentary evidence of the fees is presented to the trial court,

---

[12]  The Supreme Court of Nevada recently discussed with approval its attorneys' fees analysis in *Sandy Valley*, noting that the decision was later receded from on different grounds. *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Development Co.*, 255 P.3d 268, 279 n.11 (Nev. 2011).

generally in a post-trial motion. Opposing parties have an opportunity to contest the request for attorney fees, and the trial court must determine if any agreement, statute or rule authorizes fees. If the fees are authorized, the trial court examines the reasonableness of the fees requested and the amount of any award. Thus, when a court is requested to award attorney fees as a cost of litigation, the matter is decided based upon pleadings, affidavits and exhibits. On rare occasions, a court may even determine the amount of the attorney fees based upon the court's personal observation of the time the attorney spent in hearings and the quantity and quality of pleadings filed by the attorney.

117 Nev. at 956, 35 P.3d at 969 (footnotes omitted). The Court also observed that "[w]hen authorized, a district court's award of attorney fees as costs will not be overturned on appeal absent a manifest abuse of discretion." *Id.* (citation omitted).

The Court finds, as explained above, that the attorneys' fees requested are authorized by the Guaranty Agreements. Moreover, Regions properly supports its request for attorneys' fees by affidavit, as permitted by the Nevada Rules of Civil Procedure governing the form of permissible evidence on motions. N.R.C.P. 43(c) ("When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."); *see also Sandy Valley*, 117 Nev. at 956 n.10, 35 P.3d at 969 (citing with approval *James Hardie Gypsum, Inc. v. Inquipco*, 112 Nev. 1397, 929 P.2d 903 (1996), for the premise that "attorney fees were awarded pursuant to agreement and properly proven

by affidavit pursuant to NRCP 43(c)").

In evaluating the amount of Regions's request for attorneys' fees, this Court next considers the reasonableness of the fees requested as compared to the amount of contractual damages awarded. *See Sandy Valley*, 117 Nev. at 956, 35 P.3d at 969 ("If the fees are authorized, the trial court examines the reasonableness of the fees requested and the amount of any award."). Regions seeks $5,980.01 in attorneys' fees; by contrast, the contractual damages awarded pursuant to Regions's breach of contract claim total $1,346,965.67. Thus, the amount of attorneys' fees requested does not even reach .05 percent of the total award for breach of contract.

As for the amount of time spent on this matter, the attorneys' fees requested represent 33.97 hours of work, apportioned among four attorneys as follows:

| Attorney | Rate | Time Spent | Total Fee |
|---|---|---|---|
| Jayna Lamar, partner | $307.50/hr | 0.60 hours | $184.50 |
| Julia Bernstein, partner | $210.00/hr | 5.87 hours | $1,232.70 |
| Christine Borton, associate | $150/hr | 4.15 hours | $622.50 |
| Tiffany T. Leonard, associate | $168.75 | 23.35 hours | $3,940.31 |

Other than the amount of time spent, the hourly rate and basic identifying information for each attorney, and total fee amounts, the Affidavit of Ms. Leonard in support of attorneys' fees does not provide the Court any further information as to the fees and

expenses her firm incurred "in prosecuting this matter."  *See* Doc. 11-1, Ex. D.[13]

However, under the guidance provided by the Supreme Court of Nevada, the Court

may also consider the "quantity and quality of pleadings filed by the attorney[s]."

*Sandy Valley*, 117 Nev. at 956, 35 P.3d at 969.  First, the Court recognizes that this

is a multi-Defendant case involving multiple overlapping contracts.  The attorneys

drafted and filed a detailed Complaint (Doc. 1), which included 72 pages of

supporting exhibits; a request for service (Doc. 2); a Motion for Clerk's Entry of

Default (Doc. 9), and its Motion for Default Judgment (Doc. 11), which included 32

pages of supporting exhibits.

By comparison, this Court recently upheld an award of reasonable attorneys'

fees in a default judgment matter demonstrating similar quantity and quality of work

product in the amount of $7,631.25.  *Quezada-Artiaga v. La Macarena, Inc.*, Case

No. 2:10-CV-2820-VEH, Doc. 16 at 8–15 (N.D. Ala. Apr. 7, 2011).[14]  Further, this

Court is aware of average rates of attorneys for similar work in this jurisdiction, and

finds that the rates charged are within the range of average rates.  Moreover, the

Court finds that 33.97 hours of work in prosecuting this default judgment action is

---

[13]  The affidavit does not include any attachments, such as time sheets or fee invoices.

[14]  In *Quezada-Artiaga*, an FLSA case, the Court engaged in a lengthy analysis of the reasonablness of the requested fee, using the Eleventh Circuit's lodestar formula.  Ultimately, the Court reduced the amount of attorneys' fees requested from $9,868.75 to $7,631.25 to reflect a more reasonable hourly rate.

also reasonable.

Finally, though the Defendants have been served with process and notified of this action, and had a fair opportunity to respond to and oppose the attorneys' fees requested in Plaintiff's Motion for Default,[15] they have chosen not to do so.

Given all these factors, including the relatively small size of the attorneys' fees requested as compared to the total award for contractual damages in this case; the size and complexity of this multi-Defendant contractual matter; and this Court's knowledge and experience in awarding similar fees, the Court finds that the fees requested in this case are reasonable.  Using its discretion and based on its careful review of the pleadings, affidavits, and exhibits submitted in this case, the Court finds that Regions is due to be awarded $5,980.01 , the requested amount attorneys' fees, as a reasonable cost of litigation.

3.    Costs

Finally, the Court turns to Plaintiff's requests for costs and expenses, which are also expressly contemplated in the Guaranty Agreements.  *See* Guaranty Agreements, Doc. 11-1, Ex. E ("Undersigned does hereby further guarantee to pay upon demand

---

[15]  Plaintiff certified that it mailed copies of its Motion for Default Judgment (Doc. 11) to all Defendants at the addresses at which they were duly served.  *See* Doc. 11 at 4.  Moreover, the Court's records demonstrate that the clerk mailed copies of the Court's Show Cause Order  to all Defendants on August 3, 2011, via United States Postal Service.

all losses, *costs*, attorneys' fees *and expenses* which may be suffered by you by reason of Customer's default or default of the undersigned." (emphasis added)).  Regions seeks costs totaling $373.10.  (Doc. 11-1, Ex. D, ¶ 11).  These costs consist of "the filing fee, copies, and certified mailings."  The Court finds that Regions is due to be awarded these reasonable costs.

### III.  CONCLUSION

For the reasons stated in this Memorandum Opinion, the Plaintiff's Motion for Default Judgment (Doc. 11) is due to be **GRANTED**.  Regions has successfully established that the Defendants are liable under both Counts of the Complaint, and therefore **JUDGMENT** is due to be entered against the Defendants.  Totaling its contractual damages, attorneys' fees and costs, Regions is entitled to be awarded a sum of $1,353,318.78.  The Court will enter a separate Final Judgment consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this the 20th day of September, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge